IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) Case No. 23-cr-212-RCL<br>)<br>) |
| CHRISTINA TRAUGH, | )<br>)<br>) |
| Defendant | ) |

**SENTENCING MEMORANDUM OF CHRISTINA TRAUGH**

A 49-year-old nurse, Christina Traugh entered the Capitol on January 6, walked around the Rotunda for four minutes, and then exited the building. She did not encourage rioters to enter the Capitol, interfere with law enforcement officers, engage in disorderly conduct, jump over or pull down barricades, or destroy any property. Traugh pled guilty to parading/demonstrating in the Capitol Building under 40 U.S.C. § 5104(e)(2)(G). She has no criminal history and is deeply remorseful for her decision to enter the Capitol without authorization. Her family's financial well-being, as well as the geriatric community in her hometown, depend on the nurse's continued employment. Traugh respectfully requests that the Court impose the sentence recommended by the Probation Office—12 months' probation, a fine, and restitution.

**Factual background**

    **A.**    **Traugh's background, family, employment history, and character**

Traugh, 49, is a registered nurse for a nursing agency in Lemoyne, Pennsylvania. Although she was raised in a Christian family with strict moral values, Traugh's father was physically and psychologically abusive toward her at a young age. Presentence Investigation

1

Report (PSR), ECF 20, ¶ 42.  As a result, Traugh's parents divorced when she was in the second grade.  *Id.*

Traugh's relationships since that time have not fared much better.  Her prior husband was also physically abusive.  PSR, ¶ 45.  In 2009, Traugh's current husband was arrested for assaulting her, having succumbed to an addition to alcohol and narcotics.  *Id.*, ¶ 48.

Traugh maintains a certification in rehabilitation nursing.  PSR, ¶ 58.  She is currently employed as a registered nurse for Milestone Staffing, which services the geriatric community in Lemoyne.  *Id.*, ¶ 59.  Traugh works seven days a week with the elderly.  Her income is essential to monthly mortgage payments she and her husband make on their home.  Thus, if Traugh were to receive a sentence of incarceration (or home detention), it would put at risk the couple's home, her nursing career, and the welfare of the local geriatric community.

        **B.**     **The petty misdemeanor conviction and presentence investigation report**

On July 19, 2023, Traugh pled guilty to one count of parading/demonstrating in the Capitol Building under § 5104(e)(2)(G).

On January 6, Traugh drove from her home in Dillsburg, Pennsylvania, to Maryland, where she met with three companions (see below).  PSR, ¶ 25.  They attended the former president's "Stop the steal" rally.  Afterward, the group followed the crowd to the Capitol at approximately 3:04 p.m.  *Id.*  They entered the building at that time, walked around the Rotunda for approximately four minutes, and then exited the Capitol at 3:12 p.m.  *Id.*, ¶ 27.  Pursuant to U.S.S.G. §1B1.9, the Guidelines do not apply to Traugh's conviction, as it is a Class B misdemeanor.  PSR, ¶ 34.

**Argument**

    **I.**     **Sentencing procedure**

As it knows, the Court has broad discretion to consider nearly every aspect of a particular

case, and a particular defendant, in fashioning an appropriate sentence. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the Court must first calculate the appropriate sentencing range under the Guidelines, it is not bound by the Guidelines or Guidelines Policy Statements. It may make its own policy judgments, even if different from those in the Guidelines. *Kimbrough*, 552 U.S. at 101.

The Court must merely impose a sentence consistent with the terms of 18 U.S.C. § 3553(a) and § 3661. As the Court knows, the cardinal requirement of § 3553(a) is that the "court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes of [§ 3553(a)]. . ." § 3553(a). As the Court also knows, it may not impose a "split" sentence on Traugh's Class B misdemeanor conviction, i.e., a sentence that includes both prison time and probation. *United States v. Little*, 2023 U.S. App. LEXIS 21650 (D.C. Cir. Aug. 18, 2023).

**II.     The § 3553(a) factors favor the Probation Office's recommended sentence**

    **A.     The nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1))**

Traugh's participation in the offense is minimal. She is guilty of a Class B misdemeanor under § 5104(e)(2)(G) because she demonstrated inside the Capitol. But Traugh did not obstruct law enforcement, destroy property, go in search of members of Congress, or behave in a disorderly fashion. After a law enforcement officer directed her to leave the building, she promptly complied. PSR, ¶ 26.

The fact that Traugh is a first-time offender is an appropriate reason for imposing a sentence that does not include incarceration. *E.g.*, *United States v. Tomko*, 562 F.3d 558, 560 (3d Cir. 2009) (affirming probationary sentence based partly on defendant's "negligible criminal history"); *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008); *United States v. Munoz-Nava*, 524 F.3d 1142, 1143 (10th Cir. 2008). Traugh's true remorse for her conduct—

3

which she will express to the Court in her allocution—is another reason. *E.g.*, *United States v. Howe*, 543 Fed. 3d 128, 138 (3d Cir. 2008).

Above all, this factor favors a sentence of probation given that Traugh's incarceration would put at risk the home she shares with her husband (through missed mortgage payments), her nursing career, and the welfare of the local geriatric community which depends on her care.

### B.   Avoiding unwarranted sentence disparities (§ 3553(a)(6))

Section 3553(a) requires courts to fashion a sentence in a way that avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Sentencing Traugh to a term of incarceration would create many unwarranted sentence disparities.

First, a term of incarceration here would be inconsistent with comparable January 6-related sentences this Court has imposed on the § 5104(e)(2)(G) charge. In those, the Court has imposed a term of probation rather than incarceration. *E.g.*, *U.S. v. Anna Morgan-Lloyd*, 21-cr-165-RCL; *U.S. v. Gary Wickersham*, 21-cr-606-RCL; *U.S. v.Gary Smith*, 21-cr-6-RCL; *U.S. v. Deborah Kuecken*, 23-cr-6-RCL; *U.S. v. Justin McAuliffe*, 21-cr-206-RCL; *U.S. v. James Uptmore*, 21-cr-149-RCL; *U.S. v. Brennen Machacek*, 23-cr-121-RCL. In a number of these cases, the defendant did not have a family that was financially dependent on him or her, as with Traugh.

Second, Traugh's companions on January 6 were all sentenced to 24 months' probation on the same offense. *United States v. Clark, et al.*, 21-cr-218-APM, ECF 99, 101, 103. Imposing a higher sentence on Traugh would create unwarranted sentence disparities.

Third, a term of incarceration would create unwarranted disparities between Traugh's sentence and sentences imposed on § 5104(e)(2)(G) defendants by other judges in this district. In most instances, the conduct of these probationary misdemeanants was more disruptive than

4

Traugh's. Department of Justice January 6 Sentencing Chart, dated Aug. 15, 2023, available at:

https://www.justice.gov/file/1593211/download. Here are some examples:

| 1/6 Def. & Case No. | Charge | Sentence | Offense Conduct |
|---|---|---|---|
| Josh & Jessica Bustle, 21cr238 | Parading in Capitol | 24 mos. probation and 24 mos. supervised release | Entered Capitol Building, remained for 20 minutes. Posted on Facebook, "Pence is a traitor. We stormed the capital (sic). . . We need a revolution!" |
| Bryan Ivey, 21cr267 | Parading in Capitol | 36 mos. probation | Entered Capitol Building through a breached window, waving additional rioters into the building, spending 30 minutes inside. |
| Valerie Ehrke, 21cr97 | Parading in Capitol | 36 mos. probation | Entered Capitol Building. |
| Andrew Bennett, 21cr227 | Parading in Capitol | 3 mos. home confinement, 24 mos. probation | Entered the Capitol Building, livestreaming the event on his Facebook page for over an hour. |
| Lori, Thomas Vinson, 21cr355 | Parading in Capitol | 5 years probation, 120 hours of community service | Entered the Capitol Building, later telling news outlet that her actions were "justified" and that she would "do this all over again." |
| Jordan Stotts, 21cr272 | Parading in Capitol | 24 mos. probation | Entered the Capitol Building, remained inside for an hour, celebrating with others and taking videos with his cell phone. |

| Douglas Sweet, Cindy Fitchett, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, Fitchett filming herself saying, "We are storming the Capitol. We have broken in." |
|---|---|---|---|
| Rasha Abdual-Ragheb, 21cr42 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, desiring to |

| | | | |
|---|---|---|---|
| | | | demonstrate against Congress. |
| Jonathan Sanders, 21cr384 | Parading in the Capitol | 36 mos. probation, 60 hours community service | Entered the Capitol Building, intending to protest presidential election |
| Michael Orangias, 21cr265 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures inside. |
| John Wilkerson, 21cr302 | Parading in the Capitol | 36 mos. probation, 60 hours of community service | Entered the Capitol Building, posting on social media, "today was a good day, we got inside the Capitol." |
| Brandon Nelson, 21cr344 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, co-defendant texting, "We stormed the Capitol and shut it down. Currently still inside" and "Patriots won't go down without a fight." |
| Andrew Wrigley, 21cr42 | Parading in the Capitol | 18 mos. probation | Entered the Capitol Building, taking pictures of himself inside |
| Jacob Hiles, 21cr155 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures showing him smoking "an unknown substance" inside. |
| Bruce Harrison, 21cr365 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures of himself inside. |
| Terry Brown, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, disobeyed police order to leave. |
| Felipe Marquez, 21cr136 | Disorderly conduct in the Capitol | 18 mos. probation | Entered the "hideaway" office of Senator Merkley, saying, "We only |

| | | | |
|---|---|---|---|
| | | | broke a couple windows." |
| Michael Rusyn, 21cr303 | Parading in the Capitol | 24 mos. probation | Among the first to enter the Capitol through a certain door, part of a group of people who shouted, "Tell Pelosi we're coming for that b****," called police traitors, and shouted "Stop the steal." |
| Andrew Hatley, 21cr98 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures with various historical statues. |
| Nicholas Reimler, 21cr239 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures of himself and friends. |
| Caleb Jones, 21cr321 | Parading in the Capitol | 2 mos. home confinement, 24 mos. probation | Entered the Capitol Building, "walking down numerous hallways and into the Capitol Rotunda." |
| Anthony R. Mariotto, 21cr94 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, posting on Facebook, "This is our house" under selfie photograph. |
| Michael Stepakoff, 21cr96 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, posting on social media after, "The Capitol is OUR house, not theirs." |
| Tanner Sells, 21cr549 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building. |
| Gary Edwards, 21cr366 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, including Senate office S140. |
| Zachary, Kelsey Wilson, 21cr578 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, penetrating all the way to the Speaker's personal office |

| Jennifer Parks, Esther Schwemmer, 21cr363 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures inside |
| Jackson Kostolsky, 21cr197 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building |
| Eduardo Gonzalez, 21cr115 | Parading in the Capitol | 24 mos. probation | Entered the Capitol, smoking marijuana inside "multiple times." |
| Israel Tutrow, 21cr310 | Parading in Capitol | 36 mos. probation | Entered the Capitol Building with a knife |

In short, sentencing Traugh to a term of incarceration would create dozens or even hundreds of unwarranted sentence disparities.

**C.     The seriousness of the offense and deterrence (§ 3553(a)(2))**

The Court must consider "the need for the sentence imposed . . . to reflect the seriousness of the offense" and to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant." § 3553(a)(2).

Traugh is a woman with no criminal history who is convicted of a Class B misdemeanor. Those biographical facts alone imply she is highly unlikely to recidivate. *Recidivism Among Federal Offenders*: *A Comprehensive Overview*, U.S. Sentencing Commission, Mar. 2016, p. 23, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf. Prior to January 6, nonviolent demonstrators at the Capitol who violated relevant law were typically penalized under a process called "post and forfeit": they paid to have their demonstration-related case dropped for approximately $25-100. ACLU, District of Columbia, Demonstrations in D.C., available at: https://www.acludc.org/en/know-your- rights/know-your-rights-demonstrations-dc. That was deemed sufficient deterrence. In contrast, Traugh was charged with a crime in federal court. FBI agents came to her home. A sentence of incarceration—along with a loss of employment and its destabilizing effect on her family—is not needed to deter Traugh from entering the Capitol again

9

without authorization. Together with scathing media criticism and social ostracization, a federal conviction, sentence of probation, and significant fine will well and truly deter Traugh. The heavy shame she has experienced is itself a guarantee of deterrence. *See*, *e.g.*, *United States v. Polizzi*, 549 F. Supp. 2d 308, 449 (E.D.N.Y. 2008) (specific deterrence satisfied by "intense shame created by the convictions); *United States v. Maynard*, 2020 U.S. Dist. LEXIS 179542, at *5 (E.D.N.Y. Dec. 17, 2012) (Weinstein, J.) (same).

**Conclusion**

For all the foregoing reasons, Traugh respectfully requests a sentence of 12 months' probation, a fine, and restitution.

Dated: October 13, 2023                    Respectfully submitted,

<div style="margin-left: 40%">

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Christina Traugh*

</div>

**Certificate of Service**

I hereby certify that on the 13th day of October, 2023, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

<div style="text-align:right">

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Christina Traugh*

</div>